## SETH A. CAREY *v.* CHARLES L. HART.

*Cross-examination. Suppression of information not necessarily fraud in law.*

1. The trial court may refuse to allow the plaintiff to inquire of a witness for the defendant as to a subject about which the witness did not testify in chief, upon which the plaintiff introduced no testimony in the opening of his case, and which does not go to the bias or interest of the witness.

2. The plaintiff claimed that the defendant had been guilty of fraud in the sale of a horse. The defendant had owned the horse but ten days, and during that time had seen nothing wrong with it. He had received a letter from a former owner stating that she appeared to have some trouble with her head. *Held*, that the failure to disclose this information to the plaintiff was not fraud in law, but merely evidence of fraud, which should be submitted to the jury under proper instructions.

Replevin for a horse. Plea, the general issue. Trial by jury at the April term, 1890, Taft, J., presiding. Verdict and judgment for the defendant. The plaintiff excepts.

The parties had exchanged horses, and the plaintiff claimed that the defendant had been guilty of such fraud in connection therewith as entitled him, the plaintiff, to rescind the trade and demand back his horse. It was conceded that if the plaintiff had the right to rescind he had properly exercised that right.

The alleged fraud consisted in misrepresentations as to the horse exchanged.

Upon the cross-examination of one Clark, a witness for the defendant, the plaintiff proposed to ask him the value of this horse. The plaintiff had not gone into this question in the opening of his case, and the witness had not testified as to it upon his

Carey *v.* Hart.

direct examination. The court excluded the question for that it "was not part of the cross-examination."

The defendant bought the horse, which he exchanged with the plaintiff, April 20th, and made the exchange on the 30th of the same month. The person of whom he bought her had owned her but two days, and desiring to know more about her he wrote to one Snyder, who had owned her for some time, a letter of inquiry, in answer to which he received the following reply:

"I can only say that I traded for her some time in the winter— first part of the winter. She was called to me eight years old. I am not an expert on a horse's age. I used her only for single driving. Report says she is a good worker in double team, and the way her mane is worn shows that she has been worked. With me she has been uniformly kind and no tricks, but all the time I had her there seemed to be some difficulty about her eating and tendency on the road to go with her head down, and with tendency to go still lower. Seemed to me to be some difficulty about the head. I decided she wasn't what I wanted for a single driver and traded with Willey. No questions asked on either side. Once while I had her she gave out on the road. Head down to the ground, her tongue out of her mouth. What was the matter with her, I don't know."

This letter was received by the defendant before the exchange with the plaintiff, and the information which it contained was not communicated to him in the course of that trade. The court instructed the jury in a manner not excepted to as to what would constitute fraud in the making of the exchange, and submitted this letter to them as bearing upon that question; but refused to hold that the conduct of the defendant in not disclosing its contents was fraudulent as matter of law.

*H. F. Wolcott,* for the plaintiff.

It was error to exclude the question put Clark on cross-examination.

*Kidder* v. *Smith,* 34 Vt. 294; *Kimball* v. *Lock,* 31 Vt. 686.

It was fraudulent of necessity to withhold the information derived from Snyder's letter.

*Howard* v. *Gould*, 28 Vt. 523; *Mallory* v. *Leach*, 35 Vt. 156; *Graham* v. *Styles*, 38 Vt. 578 ; *Twitchell* v. *Bridge*, 42 Vt. 72; *Carrigan* v. *Hull*, 5 Vt. 22.

*W. L. Burnap* and *J. J. Enright*, for the defendant.

The question put Clark was properly excluded.

*State* v. *Smith*, 49 Conn. 380 ; *Hughes* v. *Westmoreland*, 104 Penn. St. 213 ; 1 Greenl. Ev. § 445 ; Robert's Dig. 262.

The court properly left it to the jury to say whether it was fraudulent to withhold the information conveyed by Snyder's letter.

1 Big. Fr. 139 ; *Iasigi et al.* v. *Brown*, 17 How. 183.

The opinion of the court was delivered by

TYLER, J. The bill of exceptions presents two questions : First, whether the trial court erred in excluding the interrogatory put by the plaintiff to the defendant's witness Clark as to the value of the mare in controversy. The plaintiff had closed his case and had not been prevented from showing the value of the mare. If there was any materiality to the evidence it was a part of the plaintiff's opening case and the court had a right to exclude it on that ground ; besides, it was not in cross-examination of anything that the witness had testified to in chief, and it was within the discretion of the court to exclude it for that reason. It is a wholesome rule, stated in *Hughes* v. *Westmoreland Coal Co.*, 104 Penn. St. 213, cited by defendant's counsel, that " cross-examination must be confined to matters which have been stated in the examination in chief and to such questions as may tend to show bias and interest in the witness." 1 Greenl. Ev. § 445, citing 14 Pet. 461.

The second question is whether the court erred in not instructing the jury that the failure of the defendant to refer to the

Carey v. Hart.

letter of Snyder, was fraudulent as matter of law. The court could not have directed a verdict for the plaintiff had it been thereto requested because the evidence was conflicting, the plaintiff having testified that the defendant represented to him that the mare was "all right every way, except she was slow," and the defendant having testified that the plaintiff took her without inquiry when he learned that she was the "Carty mare." It was a question of fact for the jury to find whether the defendant was put in a position where he was bound to disclose all knowledge of the mare's defects, or whether the plaintiff took her relying upon his own knowledge of her, without inquiry.

The letter apprised the defendant that while Snyder owned the mare she had a "difficulty" with her head, but the defendant testified that during the ten days he had owned her he had fed her well, driven her from twenty to thirty miles daily and had not seen or known of any trouble with her. From his use and observation of her he may have believed that she had recovered from the difficulty she had when in the hands of her former owner. He might rely upon his own knowledge as well as upon what the letter stated. Therefore, it was properly submitted to the jury to decide whether the defendant knew or had reason to suppose that the mare was unsound at the time of the exchange with the plaintiff. The letter was evidence to be considered with the other evidence in the case.

The court carefully called the attention of the jury to the respective claims of the parties, read the Snyder letter to them, and among other things charged that "if, at the time this contract was made, the defendant stated any material fact about the horse to be different from what he knew it to have been at that time, that is, if he stated falsely about any of the characteristics or qualities of the horse, that would have been fraudulent. Or, if he stated that he knew of no defect when in fact he did, or concealed any defect in the horse from the plaintiff at that time, that would be such a fraud as would entitle the plaintiff to

Carey *v.* Hart.

rescind the contract." \* \* \* \* "Now in making a trade, a man may say nothing about the character or qualities of the property that he is selling, but if he is asked with reference to it and he undertakes to tell, he must then disclose fully and freely what he does know about it. If he states the facts falsely or misrepresents them or fraudulently conceals the facts that he knows with reference to it, when he is inquired of with reference to the soundness or unsoundness of the property, then he is guilty of fraud as I have stated to you."

It was also explained that the plaintiff must have been induced to make the contract by the defendant's false representation or suppression of facts.

Having correctly stated the law of the case, we think the court properly submitted it to the jury to find, as a question of fact, whether there was fraudulent concealment or not.

*Judgment affirmed.*